1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA

10   ANTOINE D. JOHNSON, M.D.,

11                    Plaintiff,                    CASE NO. C06-5502BHS

12            v.

13   GRAYS HARBOR COMMUNITY                         ORDER GRANTING IN PART
     HOSPITAL; GRAYS HARBOR                         AND DENYING IN PART
14   COMMUNITY HOSPITAL MEDICAL                     DEFENDANT SHIN'S MOTION
     STAFF; GRAYS HARBOR COMMUNITY                  FOR SUMMARY JUDGMENT;
15   HOSPITAL GOVERNING BOARD; KI                   DENYING MOTIONS TO
     SHIN, MD; TIM TROEH, MD; BRENT                 STRIKE, AND DENYING
16   ROWE, MD; GREGORY MAY, MD;                     MOTION TO CONTINUE
     DANIEL CANFIELD, MD; ROBIN                     HEARING
17   FRANCISCOVICH, MD; THOMAS J.
     HIGHTOWER, MD; SHELLY DUEBER,
18   MD; and DOES 1 through 50 inclusive,

19                    Defendants.

20

21         This matter comes before the Court on Defendant Shin's Motion for Summary Judgment

22   (Dkt. 112), Plaintiff's Motion to Continue the Hearing in Defendant Shin's Motion for Summary

23   Judgment (Dkt. 119), Plaintiff's Motion to Strike Declaration of Ki Shin (Dkt. 121), Plaintiff's

24   Motion to Strike Praecipe Filed 4 October 2007 (Dkt. 137), and Plaintiff's Motion to Strike

25   Declaration of Joan M. Brodie (Dkt. 122). The Court has considered the pleadings filed in

26   support of and in opposition to the motions and the remainder of the file herein.

27

28   ORDER - 1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 2006, Plaintiff Antoine Johnson filed suit in federal court seeking declaratory, injunctive and equitable relief, compensatory and punitive damages, and attorneys' fees and costs for (1) racial discrimination under 42 U.S.C. § 1981; (2) deprivation of rights under 42 U.S.C. § 1983; (3) defamation of character under 42 U.S.C. § 1983, RCW 9.58.010, and RCW 49.44.010; (4) impairing the obligation of a contract pursuant to Article 1, Section 10 of the United States Constitution and Article 1, Section 23 of the Washington State Constitution; (5) retaliation under 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution; (6) tortious interference with present and future contractual relationships under 42 U.S.C. §§ 1991, 1983, the Fourteenth Amendment to the United States Constitution, and RCW 49.44.010; (7) fraud and forgery in violation of RCW 9A.060.010, 020 and 42 U.S.C. § 1983; and (8) negligence pursuant to RCW 5.40.050, RCW 70.41.23, RCW 70.43.010, and Article 1, Section 10 of the United States Constitution. Dkt. 1 at 10-13. The following are the facts taken in the light most favorable to Dr. Johnson, the nonmoving party:

### A.   PLAINTIFF'S CREDENTIALING HISTORY

On December 28, 2001, Plaintiff was informed that he was granted a one-year provisional staff appointment to Grays Harbor Community Hospital ("Grays Harbor"). Dkt. 1 at 5; Dkt. 1-2, Exh. B at 4. Under the Grays Harbor Medical Staff Bylaws, clinical privileges and medical staff membership automatically terminate upon the expiration of the provisional period. Dkt. 1-2, Exh. C at 6. The parties dispute whether Dr. Johnson was granted regular medical staff appointment. Dr. Johnson contends that after completion of the one-year provisional appointment, he was not offered, and did not sign, an application for initial appointment to the medical staff of Grays Harbor. Dkt. 1 at 5; Dkt. 1-2, Exh. B at 4. Defendants offer evidence that the Board of Directors changed Dr. Johnson's status from provisional to active in November of 2002. Dkt. 116 at 2; Dkt. 116-2, Exh. A; Dkt. 116-4, Exh. C at 3.

In December of 2002, Grays Harbor responded to a credentialing questionnaire from Molina Healthcare of Washington ("Molina"). Dkt. 1 at 4; Dkt. 1-2, Exh. A at 2. Sue Vance,

who is not a party to this case, told Molina that Dr. Johnson's clinical privileges at Grays Harbor were renewed on November 12, 2002, and that Dr. Johnson had full admitting privileges and medical staff membership. Dkt. 1 at 5; Dkt. 1-2, Exh. A at 2. Again, Dr. Johnson disputes whether his privileges were renewed in November of 2002. Ki Shin, the moving party, had no involvement in credentialing operations at this time. Dkt. 113 at 2.

From January 1, 2004, to December 31, 2004, Dr. Shin served as the Grays Harbor medical staff's Chief of Staff. Dkt. 113 at 2. At the end of this term, Dr. Shin served as a member of the Credentials Committee. Dkt. 113 at 2. During Dr. Shin's tenure as Chief of Staff, the medical staff at Grays Harbor maintained a set of bylaws establishing the process for appointment and renewal of staff privileges. Dkt. 113 at 2. The bylaws provided that successful new applicants were appointed for a one-year term of provisional staff privileges, after which provisional members are eligible for regular medical staff appointment. Dkt. 113 at 2-3. Regular medical staff members are reappointed for two-year terms. Dkt. 113 at 3.

**B.    THE CREDENTIALING ERROR**

In June of 2004, Grays Harbor began preparations for a routine survey by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO"). Dkt. 113 at 3. As part of such preparations, medical staff personnel realized that some physicians' files had not been updated. Dkt. 113 at 3. The files of two members, including Dr. Johnson, were missing current letters of reappointment. Dkt. 113 at 3. The other member's[1] reappointment could not be confirmed, and the member's admitting privileges were interrupted for approximately one month while the member reapplied. Dkt. 113 at 3.

Dr. Shin informed Plaintiff that he had a "credentialing error" in his file. Dkt. 1 at 5. Dr. Shin informed Plaintiff that even though he had been admitting patients to Grays Harbor, he was not on staff because he had not completed an initial appointment application. *Id.* Plaintiff asked whether any other members of the medical staff had such credentialing errors and was told that

---

[1] The parties have stipulated to refraining from identifying this physician by name.

ORDER - 3

he was the only person affected. *Id.* at 5. Dr. Johnson alleges that he was not provided an initial appointment application due to his race and that he was suspended to correct the credentialing error. *Id.* at 9, 6.

Dr. Johnson's reappointment was ultimately confirmed through a review of minutes from 2002 Board of Directors meetings. Dkt. 113 at 3. Specifically, the minutes contained a November 2002 entry approving Dr. Johnson's full appointment to the medical staff. As a result, Dr. Johnson was permitted to continue admitting patients to Grays Harbor. Dkt. 113 at 3.

**C.    SUSPENSION**

In September of 2004, the Grays Harbor nursing staff grew concerned about a patient Dr. Johnson admitted with a diagnosis of alcohol withdrawal. Dkt. 113 at 4. The nurses reported that the patient had not been seen by any physician for three days and was receiving unusually high doses of Valium pursuant to a prescription made by Dr. Johnson over the telephone. Dkt. 113 at 4. As Chief of Staff, Dr. Shin investigated the nurses' report and contacted Dr. Johnson. Dkt. 113 at 4. Dr. Shin found Dr. Johnson's justifications to be insufficient and summarily suspended Dr. Johnson pending formal investigation by the Credentials Committee. Dkt. 113 at 4. Thomas Hightower informed Dr. Johnson by letter that his clinical privileges were summarily suspended based on a review of documentation for one of Dr. Johnson's patients. Dkt. 1-2, Exh. D at 8.

In October of 2004, the Credentials Committee investigated the suspension and found that it was warranted. Dkt. 113 at 5. The Credentials Committee also approved a remedial plan under which Dr. Johnson's privileges would be restored if he satisfied certain requirements, including evaluation by the Washington Physician Health Program, six months of monitored patient admissions, and timely documentation of hospitalized patients. Dkt. 11 at 5. Dr. Shin contends that his decision to suspend Dr. Johnson was made in good faith and in accordance with Grays Harbor procedures and bylaws.

1

**D.     LAPSE OF PRIVILEGES**

2

    In the fall of 2004, the medical staff office mailed a reapplication packet to Dr. Johnson.

3

Dt. 113 at 5. Dr. Johnson did not complete and return the reapplication packet, and his privileges

4

lapsed in November 2004.

5

    Pending before the Court is Defendant Shin's Motion for Summary Judgment. Dkt. 112.

6

Dr. Shin seeks summary judgment on the following grounds: Plaintiff offers no evidence of

7

intentional or negligent misconduct to sustain any of the claims pled; by way of example, Dr.

8

Johnson cannot satisfy any element of a defamation claim against Dr. Shin. Dkt. 112 at 5-13. Dr.

9

Johnson seeks a continuance of the motion and has filed three motions to strike. *See* Dkt. 119

10

(motion for continuance); Dkts. 121, 122, 137 (motions to strike). Dr. Shin has replied (Dkt.

11

125).

12

## II. DISCUSSION

13

**A.     SUMMARY JUDGMENT STANDARD**

14

    Summary judgment is proper only if the pleadings, depositions, answers to

15

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

16

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

17

law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the

18

nonmoving party fails to make a sufficient showing on an essential element of a claim in the case

19

on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

20

323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could

21

not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v.*

22

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

23

significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P.

24

56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

25

supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

26

of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v.*

27

*Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

28

ORDER - 5

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## B.   CONTINUANCE

As a threshold matter, the Court must address Dr. Johnson's request for a continuance of Dr. Shin's motion pursuant to Federal Rule 56(f), which allows the Court to deny or continue a motion for summary judgment if the defending party establishes that it is unable to properly defend against the motion:

> **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). The party seeking such a continuance must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists. *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129-1130 (9th Cir. 2004). The Court may deny the request unless the party opposing summary judgment articulates how additional discovery may preclude summary judgment and demonstrates diligence in pursuing discovery thus far. *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). The burden is on the nonmoving party to establish that proceeding with additional discovery would produce

1   evidence sufficient to defeat summary judgment and that the evidence it seeks is in existence.

2   *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

3        The Court notes that the discovery deadline is currently set for November 19, 2007, and

4   that many depositions took place recently or have yet to occur. *See* Dkt. 120, Exh. P59 at 10

5   (Canfield deposition scheduled for November 8, 2007); Dkt. 120, Exh. P59 at 12 (Troeh

6   deposition scheduled for October 5, 2007); Dkt. 120 at 2 (Hightower deposition scheduled for

7   October 3, 2007). As explained below, the Court concludes that summary judgment would be

8   premature or inappropriate as to certain claims but that continued discovery would not lead to

9   evidence withstanding summary judgment as to other claims.

10  **C.    MOTIONS TO STRIKE**

11       Dr. Johnson moves to strike Dr. Shin's declaration filed in support of his motion and to

12  strike the declaration of Joan M. Brodie. Dkts. 121, 122. Requests to strike are governed by

13  Local Rule CR 7(g), which provides in part as follows:

14           Requests to Strike Material Contained in Motion or Briefs. Requests to strike
             material contained in or attached to submissions of opposing parties *shall not be*
15           *presented in a separate motion to strike*, but shall instead be included in the
             responsive brief, and will be considered with the underlying motion.

16  Local Rule CR 7(g) (emphasis added). Dr. Johnson's requests to strike are presented by motion

17  and therefore fail to comply with Local Rule CR 7(g). Because Dr. Johnson is proceeding pro se

18  and because it appears that inclusion of the requests to strike in separate motions rather than in a

19  responsive brief does not pose a threat of prejudice to Dr. Shin, the Court will proceed to

20  consider Dr. Johnson's requests to strike.

21       **1.    Dr. Shin's Declaration**

22       Dr. Johnson moves to strike Dr. Shin's declaration on the grounds that it is not sworn

23  under penalty of perjury. Dkt. 121 at 3. Dr. Shin's declaration is signed, and his signature is

24  preceded with the following sentence: "I *attest* under penalty of perjury under the laws of the

25  [S]tate of Washington that the foregoing statements are true and correct." Dkt. 113 at 5

26  (emphasis added).

27

28  ORDER - 7

The United States Code provisions governing documentary evidence contain a section providing that whenever sworn affidavits are permitted under federal law, an unsworn declaration is also permitted:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> . . .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

28 U.S.C. § 1746. This provision requires substantial compliance. *Commodity Futures Trading Comm'n v. Topworth Intern., Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999). "Attest" means to bear witness, testify, or affirm to be true or genuine and is sufficiently synonymous with "certify, verify, or state" to constitute substantial compliance under 28 U.S.C. § 1746. *See Black's Law Dictionary* (8th ed. 2004).

Dr. Shin has since filed a praecipe to amend his declaration to read as follows: "I declare under penalty of perjury under the laws of the [S]tate of Washington that the foregoing statements are true and correct." Dkt. 126 at 4. Plaintiff filed a Motion to Strike (Dkt. 137) that amendment. The motion was improperly noted for consideration on October 12, 2007, and the parties have not yet filed a response or reply to that motion. Having found that Dr. Shin's declaration substantially complies with 28 U.S.C. § 1746, Plaintiff's Motion to Strike Declaration of Ki Shin (Dkt. 121) is denied, and Plaintiff's Motion to Strike Praecipe Filed 4 October 2007 (Dkt. 137) is denied as moot.

### 2. Joan Brodie's Declaration

Dr. Johnson moves to strike the declaration of Joan Brodie on three grounds. Dkt. 122. First, Dr. Johnson moves to strike Ms. Brodie's summation of events occurring in 2002 on the grounds that Ms. Brodie may not have been employed with Grays Harbor in 2002 and may therefore lack personal knowledge as to certain events. Dkt. 122 at 2. In her declaration, Ms. Brodie identifies herself as the Manager of Medical Staff Services for Grays Harbor and the custodian of records for the Credentials Committee and Medical Executive Committee. Dkt. 116 at 2. Ms. Brodie's declaration seeks to clarify confusion potentially caused by her extensive redacting of documents produced through discovery. Ms. Brodie's comparison of the redacted and unredacted versions of documents she maintains as the custodian of records does not warrant striking the declaration for lack of personal knowledge.

Second, Dr. Johnson moves to strike the following statement from Ms. Brodie's declaration: "Each person listed on the Credentialing Report, including Plaintiff, was unanimously approved for the appointment or change in status as previously recommended by the Credentials Committee and the Medical Executive Committee." Dkt. 122 at 2-3; Dkt. 116 at 3. Dr. Johnson contends that this statement should be stricken because Ms. Brodie "has not declared that she (a) was at the Credential's [sic] Committee Meeting referenced in her Declaration, nor [sic] (b) that she has in her possession records of the Credential's [sic] Committee Meeting referenced in her declaration." Dkt. 122 at 3. Ms. Brodie's statement is based upon her review of the minutes from the November 27, 2002, Board of Directors meeting. Dkt. 116 at 3. Ms. Brodie provided a heavily redacted version of those minutes in response to Plaintiff's discovery requests. Dkt. 116 at 3; Dkt. 116-3, Exh. B. Dr. Johnson's request to strike is without merit.

Finally, Dr. Johnson moves to strike Ms. Brodie's declaration "because it confirms Plaintiff [sic] suspicions that something is fundamentally wrong with the professed dates of the meetings." Dkt. 122 at 3. Dr. Johnson contends that Exhibit D, minutes of the Medical Executive Committee meeting held on November 12, 2002, is internally inconsistent. Dkt. 122 at 4.

ORDER - 9

1    Specifically, Dr. Johnson notes that the minutes are dated December 12, 2002, and that Ms.

2    Brodie contends that the December date is erroneous because there was no meeting of the

3    Medical Executive Committee on December 12, 2002. Dkt. 116 at 4-5. Dr. Johnson also notes

4    that the reported time frame for reporting to the Board of Directors, which arguably should have

5    been a date in the future, was listed as "10/02." Dkt. 122 at 4. Dr. Johnson therefore concludes

6    that the dates listed on the minutes are "backwards" and result from a fraudulent attempt to

7    backdate documents. *Id.* Such a contention speaks to the credibility and weight of the evidence,

8    inquiries that are inappropriate at the summary judgment stage. Accordingly, Plaintiff's Motion

9    to Strike Declaration of Joan M. Brodie (Dkt. 122) is denied.

**D.    42 U.S.C. § 1981**

11        Dr. Johnson's second cause of action is race discrimination in violation of 42 U.S.C. §

12   1981, which provides that "[a]ll persons . . . shall have the same right . . . to make and enforce

13   contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

14   proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42

15   U.S.C. § 1981(a). In analyzing claims under 42 U.S.C. § 1981, courts use the framework of Title

16   VII, including the *McDonnell-Douglas* burden-shifting analysis. *Cornwell v. Electra Cent.*

17   *Credit Union*, 439 F.3d 1018, 1028 n.5 (9th Cir. 2006).

18        In the Ninth Circuit, there are two methods of establishing a prima facie case of disparate

19   treatment under Title VII. First, Plaintiff may establish his case by submitting direct evidence of

20   discriminatory intent. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Second,

21   Plaintiff may establish a prima facie case by showing that he is entitled to a presumption of

22   discrimination arising from factors such as those set forth in *McDonnell Douglas Corp. v. Green*,

23   411 U.S. 792, 802-04 (1973). Here, it appears that Dr. Johnson seeks to invoke a presumption of

24   discrimination:

25           By denying PLAINTIFF staff membership, and clinical privileges, a
             contractual relationship, Defendants have violated 42 U.S.C. § 1981.

28   ORDER - 10

1
2

By not adhering to GHCH policy no. 9.2-1b and not allowing PLAINTIFF an opportunity to decide whether or not he wished to continue a relationship with GHCH, Defendants have violated 42 U.S.C. § 1981.

3   Dkt. 1 at 11.

4   The *McDonnell-Douglas* burden-shifting analysis has three parts. First, the plaintiff must

5   present a prima facie case. To make out a prima facie case of racial discrimination on the basis of

6   disparate treatment, Dr. Johnson must show that (1) he belonged to a protected class; (2) he was

7   performing his job in a satisfactory manner; (3) he was subjected to an adverse employment

8   action; and (4) similarly situated employees not in his protected class received more favorable

9   treatment. *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818 (9th Cir. 2002); *Cornwell*, 439 F.3d

10  at 1028. If Dr. Johnson succeeds in presenting a prima facie case, there is a rebuttable

11  presumption of discrimination. *Cornwell*, 439 F.3d at 1028.

12  At the second step of the analysis, the burden shifts to Defendants to articulate legitimate,

13  non-discriminatory reasons for the adverse employment action. *Manatt v. Bank of America, NA*,

14  339 F.3d 792, 800 (9th Cir. 2003). If Defendants successfully carry this burden of production,

15  Dr. Johnson bears the ultimate burden of persuading the trier of fact that the reason was merely a

16  pretext for a discriminatory motive at the third step of the analysis. *Id.* Even though plaintiffs

17  must prove each element of the *McDonnell Douglas* test, the requisite degree of proof to

18  withstand summary judgment is "minimal and does not even need to rise to the level of a

19  preponderance of evidence." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1062 (9th Cir.

20  2002).

21  While Dr. Shin professes to seek summary judgment on all of Dr. Johnson's claims, his

22  motion does not address Dr. Johnson's claim of racial discrimination under 42 U.S.C. § 1981.

23  Summary judgment as to this claim would therefore be improper.

24  **E.      42 U.S.C. § 1983**

25  In order to state a claim under 42 U.S.C. § 1983, plaintiffs must demonstrate that (1) the

26  conduct complained of was committed by a person acting under color of state law and that (2)

27  the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or

28  ORDER - 11

by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Section 1983 is the appropriate remedy only if both elements are satisfied. *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985). In addition, plaintiffs must allege facts demonstrating that individual defendants caused, or personally participated in causing, the alleged harm. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).

     **1.**    **Third Cause of Action**

The Court is largely without the benefit of briefing as to Dr. Johnson's third cause of action, deprivation of rights pursuant to 42 U.S.C. § 1983. Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

In the complaint, Dr. Johnson alleges that Defendants violated 42 U.S.C. § 1983 by failing to offer him an initial appointment packet upon completion of his provisional appointment in 2002, by altering his privilege form, and by providing fraudulent information to third parties. Dkt. 1 at 11. Even if Dr. Johnson had properly alleged a constitutional provision or federal statute affording him substantive rights, these allegations, taken in the light most favorable to Dr. Johnson, do not encompass personal participation by Dr. Shin. *See id.* at 5 (alleging that Sue Vance falsely communicated that Dr. Johnson's privileges were renewed in 2002), 7 (alleging that Catherine Wright provided false communications in 2005), 8 (alleging that "Doe 1" altered Dr. Johnson's privilege form), 8-9 (alleging that Defendant Troeh communicated false information by telephone in 2005); *but see* Dkt. 134 at 7 ("It is clear that Defendant Shin was the source of defamatory and erroneous information . . . ."). Similarly, Dr. Shin's alleged supervisory position is insufficient to support liability under 42 U.S.C. § 1983. *See* Dkt. 138 at 3 ("As Chief of Staff, and paid employee/servant/agent of the Board of Defendant Hospital, Defendant Shin bears vicarious liability, through the doctrine of Respondeat

ORDER - 12

Superior . . . ."). In addition, Dr. Johnson fails to articulate how additional discovery might produce evidence sufficient to establish such personal participation and to defeat summary judgment. Therefore, the Court should grant the motion as to Dr. Johnson's claims under 42 U.S.C. § 1983.

### 2.    Sixth Cause of Action - Retaliation

Dr. Johnson's sixth cause of action asserts that Defendants retaliated against him in violation of the Fourteenth Amendment to the United States Constitution. Dkt. 1 at 12. Dr. Johnson specifically alleges that Defendants retaliated against him for refusing to conceal information from the JCAHO and for revealing discriminatory practices. *Id.* Claims of discrimination in violation of the Fourteenth Amendment may also be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bator v. Hawaii*, 39 F.3d 1021, 1028 n.7 (9th Cir. 1994); *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 472 n.14 (9th Cir. 1991).

First, Dr. Johnson must present a prima facie case. A prima facie case of retaliation requires evidence that (1) Dr. Johnson engaged in a protected activity, (2) that Defendants subjected him to an adverse employment action, and (3) that there is a causal link between the protected activity and the adverse action. *Manatt*, 339 F.3d at 800. Second, the burden shifts to Defendants to articulate legitimate, non-discriminatory reasons for the adverse employment action. *Id.* Third, Dr. Johnson must present evidence demonstrating that the proffered reason was merely a pretext for a retaliatory motive. *Id.*

Once again, the Court's analysis of this claim is frustrated by the parties' cursory briefing. Dr. Johnson alleges that Defendants retaliated against him "through fraud, forgery, and defamation." Dkt. 1 at 7. The brunt of Dr. Johnson's allegations regarding fraud, forgery, and defamation do not implicate action by Dr. Shin, and Dr. Johnson offers nothing more than speculation as to Dr. Shin's involvement in alleged forgeries. *See* Dkt. 134 at 10 (Plaintiff believes that Dr. Shin committed forgery and that future depositions will support his belief.). Such a belief, without supporting facts, fails to create a genuine issue of material fact as to any

retaliatory action by Dr. Shin, and summary judgment on Dr. Johnson's retaliation claim is therefore proper.

**F.    VIOLATION OF CRIMINAL STATUTES**

Dr. Johnson claims that Defendants committed fraud, forgery, and defamation in violation of certain criminal statutes. *See* Dkt. 1 at 11 ("By defaming PLAINTIFF, Defendants have violated . . . RCW 9.58.010"), 12 ("Fraud and Forgery pursuant to RCW 9A.60.020 and RCW 9A.60.010."). Dr. Johnson cites no authority for asserting a private, civil cause of action under these statutes. When the Washington Legislature has intended to create civil causes of action based upon violation of criminal statutes, it has done so expressly. *See, e.g.*, RCW 70.105D.080 (authorizing a private right of action to recover remedial action costs under the Model Toxics Control Act); RCW 70.94.430, 431 (authorizing both criminal and civil penalties for violations of Washington's Clean Air Act); RCW 9A.82.100 (providing a civil remedy for injury caused by criminal profiteering activity).

The legislative silence in the statutes Dr. Johnson relies upon in support of his fraud, forgery, and defamation claims precludes an implication of a private cause of action. *See Enright v. Bringgold*, 106 Wn. 233, 236 (1919) (criminal libel statute bears no relation to a civil claim for damages); *see also Clawson v. Longview Publ'g Co.*, 91 Wn.2d 408, 425 n.4 (1979) (Rosellini, J., dissenting) ("This law [RCW 9.58.010 ] expired when the 1976 criminal code (RCW Title 9A) became effective, and the present law does not punish libel. I read this omission as evidencing a legislative finding that civil remedies provided under the common law should be adequate to protect the public interest in reputation.). Such a defect cannot be cured through additional discovery. Summary judgment on Dr. Johnson's statutory claims for fraud, forgery, and defamation is therefore proper.

**G.    BLACKLISTING**

Dr. Johnson contends that Defendants tortiously interfered with present and prospective employment relationships in violation of RCW 49.44.010, which makes blacklisting a criminal offense :

ORDER - 14

> Every person in this state who shall wilfully and maliciously, send or deliver, or make or cause to be made, . . . any paper, letter or writing . . . or publish or cause to be published any statement for the purpose of preventing any other person from obtaining employment in this state or elsewhere, and every person who shall wilfully and maliciously "blacklist" or cause to be "blacklisted" any person or persons or who shall wilfully and maliciously make or issue any statement or paper that will tend to influence or prejudice the mind of any employer against the person of such person seeking employment, or any person who shall do any of the things mentioned in this section for the purpose of causing the discharge of any person employed by any railroad or other company, corporation, individual or individuals, shall, on conviction thereof, be adjudged guilty of misdemeanor and punished by a fine of not less than one hundred dollars nor more than one thousand dollars, or by imprisonment in the county jail for not less than ninety days nor more than one year, or by both such fine and imprisonment.

RCW 49.44.010. As is true of the criminal code provisions above, Dr. Johnson fails to establish that RCW 49.44.010 offers a civil remedy. Summary judgment as to claims relying on this statute is therefore proper.

## H.   DEFAMATION

In his fourth cause of action, Dr. Johnson contends that he was defamed in violation of 42 U.S.C. § 1983, RCW 9.58.010, and RCW 49.44.010. To the extent that Dr. Johnson's defamation claim is based upon state statutes, summary judgment is proper, as discussed above. It is unclear from Dr. Johnson's complaint and response whether he seeks to assert a common law claim for defamation. Assuming that Dr. Johnson does assert a common law defamation claim, summary judgment is proper for the reasons stated below.

The Court recognizes that "summary judgment plays a particularly important role in defamation cases" due to the competing interests in freedom of speech and protection of an individual's reputation. *Mohr v. Grant*, 153 Wn.2d 812, 821 (2005). To survive summary judgment, Dr. Johnson must create a genuine issue of material fact as to each of the following elements: (1) falsity of the communication; (2) lack of privilege; (3) fault; and (4) damages. *Id.* at 822.

As noted above, Dr. Johnson does not allege that Dr. Shin communicated any false information. Instead, Dr. Johnson's defamation allegations involve Sue Vance, Catherine Wright

ORDER - 15

Tim Troeh, and "Doe 1." *See* Dkt. 1 at 5, 7, 8-9. Because Dr. Johnson does not offer evidence that Dr. Shin communicated any falsities, summary judgment as to Dr. Shin's common law defamation claim is proper.

## I.   IMPAIRMENT OF CONTRACT

Dr. Johnson contends that Defendants impaired the obligation of contract in violation of Article 1, Section 10 of the United States Constitution and Article 1, Section 23 of the Washington State Constitution. Dkt. 1 at 12.

Article I, Section 10 of the United States Constitution declares that "No state shall . . . pass any . . . law impairing the obligation of contracts . . . ." U.S. Const. art. 1, § 10. Similarly, Article I, Section 23 of the Washington State Constitution provides that "[n]o . . . law impairing the obligations of contracts shall ever be passed." Wash. Const. art. 1, § 23. It is well-settled that these constitutional provisions are coextensive and are to be given the same effect. *Pierce County v. State*, 159 Wn.2d 16, 28 n.5 (2006). The Washington Supreme Court uses a three-part test to determine whether legislation impairs the obligation of a contract: (1) does a contractual relationship exist; (2) does the legislation substantially impair that contractual relationship; and (3) if there is substantial impairment, is it reasonable and necessary to serve a legitimate public purpose? *Tyrpak v. Daniels*, 124 Wn.2d 146, 152 (1994). Determining whether the challenged legislation is nevertheless justified involves two inquiries: (1) is there a legitimate public purpose for the legislation, and, if so, (2) is the legislation reasonable and necessary to achieve that public purpose? *Id.* at 156.

Because "only a Legislature can 'pass' a 'law' impairing contractual obligations[,] . . . only state legislation implicates the contract clause." *Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wn. App. 1, 6 (1989); *see also Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 (1924) ("It has been settled by a long line of decisions, that the provision of section 10, article 1, of the federal Constitution, protecting the obligation of contracts against state action, is directed only against impairment by legislation and not by judgments of courts.").

Dr. Johnson's contentions regarding his fifth cause of action, impairing the obligation of contract, are somewhat unclear. In support, Dr. Johnson alleges that Defendants failed to elevate him to a different staff category upon conclusion of his provisional appointment and failed to give him a hearing upon completion of his provisional appointment. Dkt. 1 at 12. Dr. Johnson also alleges that his initial application form was altered, "possibly at the direction of Defendant Shin." Dkt. 134 at 5. Such a speculative allegation is insufficient to withstand summary judgment. Moreover, Dr. Johnson fails to cite any state legislative action that allegedly impaired the obligation of contract and does not articulate how additional discovery would preclude summary judgment on this claim. Summary judgment as to Dr. Johnson's fifth cause of action is therefore proper.

**J.    TORTIOUS INTERFERENCE WITH PRESENT AND PROSPECTIVE EMPLOYMENT RELATIONSHIPS**

Dr. Johnson alleges that Defendants tortiously interfered with present and prospective employment relationships in violation of 42 U.S.C. §§ 1991, 1983, the Fourteenth Amendment to the United States Constitution, and RCW 49.44.010 (addressed *supra*). Dkt. 1 at 12.

A claim of tortious interference with a contractual relationship or business expectancy has five elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Pacific Northwest Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351 (2006).

Dr. Johnson has failed to create a genuine issue of material fact as to his tortious interference claim, and summary judgment on this claim is therefore proper.

**K.    NEGLIGENCE**

Dr. Johnson's ninth cause of action is negligence. To support a claim for negligence, a party must prove (1) the existence of a duty owed to the injured party; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach is the proximate cause of the injury.

ORDER - 17

1    *Hansen v. Friend*, 118 Wn.2d 476, 485 (1992). Whether there is a duty owed to the injured party

2    is a question of law. *Patrick v. Sferra*, 70 Wn. App. 676, 683 (1993).

3          Dr. Johnson alleges that Defendants violated RCW 70.41.230 and RCW 70.43.010 and

4    that such violations should be considered evidence of negligence, that Defendants released

5    information they knew or reasonably should have known to be false, that Defendants failed to

6    adhere to Article 9.2-1(b) of Grays Harbor's Medical Staff Bylaws. Dkt. 1 at 13; *see* Dkt. 134-3,

7    Exh. 68 at 35.

8          Under RCW 70.43.010, there is a time limit for hospitals to establish standards and

9    procedures for considering and acting upon applications for professional privileges. It is unclear

10   whether Dr. Shin has any involvement in Grays Harbor's establishment of such procedures.

11   Similarly, RCW 70.41.230 governs the credentialing process and outlines information to be

12   gathered before granting or renewing clinical procedures.

13         In response to the motion, Dr. Johnson alleges additional acts of negligence. First, Dr.

14   Johnson alleges that Dr. Shin failed to review the credentials of the medical staff every six

15   months pursuant to Article 6.3(b)(3) and Regulation S. Dkt. 134 at 5. Dr. Johnson also alleges

16   that Dr. Shin failed to follow procedures regarding summary suspension because he did not

17   report the suspension to the Chief Executive Officer of Grays Harbor. Dkt. 134 at 5-6; *see* Dkt.

18   134-3, Exh. 68 at 25; Dkt. 134-4, Exh. 68 at 24-25.

19         A hospital's bylaws are relevant to determining the standard of care, and physicians are

20   entitled to rely on the procedures created by such bylaws. *See Pedroza v. Bryant*, 101 Wn.2d 226

21   (1984) (hospitals owe a duty to exercise reasonable care in granting and renewing staff

22   privileges); *Ritter v. Board of Com'rs of Adams County Public Hospital Dist. No. 1*, 96 Wn.2d

23   503 (1981) (summary suspension that contravened standards upon which physicians were

24   entitled to rely was improper). There is at least a question of fact as to whether Dr. Shin

25   complied with Grays Harbor bylaws with respect to Dr. Johnson's suspension, and summary

26   judgment as to Dr. Johnson's negligence claim would therefore be improper.

27

28   ORDER - 18

1

**L.    CONSPIRACY AND INFLICTION OF EMOTIONAL DISTRESS**

2

Dr. Shin lists conspiracy and intentional or negligent infliction of emotional distress as

3

two of the claims on which he seeks summary judgment. Dkt. 112 at 6-7. These claims are not

4

listed as causes of action in the complaint, and it appears that Dr. Johnson is not asserting claims

5

for conspiracy or infliction of emotional distress. *See* Dkt. 121 at 2 (motion listing nine causes of

6

action and not including conspiracy or infliction of emotional distress); *but see* Dkt. 1 at 1 ("This

7

action seeks declaratory, injunctive and equitable relief, compensatory and punitive damages,

8

and attorney's fees and costs, for a) conspiracy . . . and j) intentional or negligent infliction of

9

emotional distress . . . ."). The Court should decline to grant summary judgment on claims that

10

Dr. Johnson has not yet pled.

11

**M.    IMMUNITY**

12

Dr. Shin contends that he is entitled to immunity under several state and federal statutes

13

because he acted in good faith. Dkt. 112 at 8. Dr. Shin cites several statutory bases under which

14

he may be entitled to immunity from suit but, at this stage, the pleadings fail to articulate

15

sufficient facts to demonstrate whether Dr. Shin falls within the purview of such statutes. *See*

16

RCW 4.24.240(2) (members of a professional review committee are not liable in a civil action

17

for or omissions made in good faith on behalf of the committee); RCW 4.24.250 (immunity for

18

health care providers who file, in good faith, charges or present evidence of incompetency or

19

gross misconduct of other members of profession); RCW 4.24.260 (health professionals who, in

20

good faith, make a report against another member of a health profession based upon

21

unprofessional conduct or inability to practice by reason of a physical or mental condition are

22

immune from civil action for damages arising out of the report); RCW 4.24.264 (directors or

23

officers of any nonprofit corporation are not individually liable for any discretionary decisions

24

unless the decisions constitute gross negligence); RCW 70.41.200(2) (any person who, in

25

substantial good faith, provides information to further the purposes of a quality improvement and

26

medical malpractice prevention program or participates on the committee shall not be subject to

27

an action for civil damages as a result of such activity); 42 U.S.C § 11111(a)(1)(D) (immunity

28

ORDER - 19

for liability under any federal or state law, except for civil rights laws, for people who participate with or assist a professional review body performing a professional review action). From the evidence before it, the Court cannot yet determine whether Dr. Shin is entitled to immunity from suit for the actions alleged in the complaint.

### III. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiff's Motion to Continue the Hearing in Defendant Shin's Motion for Summary Judgment (Dkt. 119) is **DENIED**; Plaintiff's Motion to Strike Declaration of Ki Shin (Dkt. 121) is **DENIED**; Plaintiff's Motion to Strike Praecipe filed 4 October 2007 (Dkt. 137) is **DENIED as moot**; Plaintiff's Motion to Strike Declaration of Joan M. Brodie (Dkt. 122) is **DENIED**; and Defendant Shin's Motion for Summary Judgment (Dkt. 112) is **GRANTED in part** and **DENIED in part** as follows and as provided herein: the motion (Dkt. 112) is **GRANTED** as to Plaintiff's third, fourth, fifth, sixth, seventh, and eighth causes of action and as to blacklisting, and the motion (Dkt. 112) is **DENIED without prejudice** as to Plaintiff's second and ninth causes of action.

DATED this 17th day of October, 2007.

BENJAMIN H. SETTLE
United States District Judge